IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | * Criminal No. **PJM 08-0051** |
| | * |
| **ALMA MORALES-VEGA,** | * |
| | * |
| Defendant. | * |

**MEMORANDUM OPINION**

Alma Morales-Vega is serving a 210-month prison term after being convicted of Conspiracy to Distribute with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 846. She now seeks compassionate release, by having her sentence reduced to time-served, under 18 U.S.C. § 3582(c)(1)(A),[1] which would be about 164 months. She claims there are extraordinary and compelling circumstances justifying her release: (1) her vulnerability to COVID-19, and (2) the disparity between her sentence and those of her Co-Defendants. For the following reasons, Morales-Vega's Motion is **DENIED WITHOUT PREJUDICE**.

## I. BACKGROUND

Morales-Vega's sentence stems from her cocaine distribution-related conduct. Briefly summarized, in 2007, a confidential source met with the Morales-Vega, who stated that she could supply the source with 25 kilograms of cocaine at a price of $23,500 per kilogram, and that she could obtain any number of kilograms of cocaine. Law enforcement also intercepted a series of telephone calls, during which individuals arranged for the purchase of two kilograms of cocaine from Morales-Vega; after two individuals retrieved a package from her residence, officers

---

[1] Petitioner initially filed her motion for compassionate release *pro se*. ECF No. 244. It is now fully briefed. ECF Nos. 248, 252, 256.

1

recovered two kilograms of cocaine from the trunk of their vehicle. During the execution of a search warrant at Morales-Vega's residence, officers found a 9mm handgun, a .22 caliber handgun, boxes of 9mm ammunition (two full, one empty), two plastic baggies containing 1 gram of cocaine, a digital scale, a large plastic bin with cocaine residue, large metal spoons with cocaine residue, numerous large plastic baggies with cocaine residue, two boxes of unused small and large plastic baggies, and wire transfer receipts with Morales-Vega's name.

On February 27, 2008, Morales-Vega was charged in a two-count Superseding Indictment with Conspiracy to Distribute and Possess With Intent to Distribute Cocaine in violation of 21 U.S.C. §846 (Count One), and Possession With Intent to Distribute 500 Grams or More of Cocaine in violation of 21 U.S.C. § 841(a)(l) (Count Two). See ECF No. 16. Multiple Co-Defendants were also indicted.

Following a jury trial before Judge Alexander Williams Jr., of this Court,[2] Morales-Vega was found guilty on Count One of the Superseding Indictment. The jury did not reach a unanimous verdict on Count Two.

At sentencing, Judge Williams adopted the Presentence Report (PSR) including the calculated offense level 40,[3] but reduced Morales-Vega's offense level to 39 after concluding that she was a "manager or supervisor and not necessarily an organizer or leader" of the conspiracy. ECF No. 181 at 21-22. Judge Williams also granted a 2-level downward departure after applying the factors under 18 U.S.C. § 3553(a), with the result that Morales-Vega had a total offense level of 37 and a criminal history category of I. That indicated a range of 210 to 262 months

---

[2] The undersigned was appointed to this case following the retirement of Judge Williams.
[3] The Pre-Sentence Report (PSR) recommended a base offense level of 34, PSR ¶ 14, and a criminal history category of I. PSR ¶ 25. The PSR also recommended a 2-level enhancement for possession of a firearm under U.S.S.G. § 2D1.1(b)(1), PSR ¶16, and a 4-level enhancement for a leader or organizer of the conspiracy. PSR ¶18. Thus, total offense level was 40, PSR ¶ 22, resulting in a guideline range of 292 to 365 months of imprisonment. PSR ¶¶ 33, 35.

2

imprisonment. On May 18, 2009, Judge Williams imposed a sentence of 210 months and five years' supervised release. ECF Nos. 163, 164.

Morales-Vega's Co-Defendants are no longer in custody. ECF No. 248. All pleaded guilty and received lower sentences than she. Specifically, Juan Herrera pleaded guilty to Count One (Conspiracy to Distribute and Possess with Intent to Distribute Five Kilograms or More of Cocaine, 21 U.S.C. § 846) and was sentenced to 155 months of imprisonment and five years of supervised released, later reduced by the Court to 124 months of imprisonment and five years of supervised release pursuant to 18 U.S.C. § 3582(c)(2). ECF Nos. 139, 225. Felipe Lucero pleaded guilty to Count One (Conspiracy to Distribute and Possess with Intent to Distribute Five Kilograms or More of Cocaine, 21 U.S.C. § 846) and was sentenced to 67 months imprisonment and five years of supervised release. ECF No. 157. Isaac Rojas pleaded guilty to Count One (Conspiracy to Distribute and Possess with Intent to Distribute Five Kilograms or More of Cocaine, 21 U.S.C. § 846) and was sentenced to 64 months imprisonment and four years of supervised release. ECF No. 109. Humberto Salazar-Torres pleaded guilty to Count One (Conspiracy to Distribute and Possess with Intent to Distribute Five Kilograms or More of Cocaine, 21 U.S.C. § 846) and Count Two (Conspiracy to Commit Money Laundering 18 U.S.C. 1956 § (h)) of a Superseding Indictment filed specifically as to him and Jesus Herrera-Zamora, ECF No. 17; he was sentenced to 87 months concurrent on each Count and five years of supervised release as to Count I and three years of supervised release as to Count Two to run concurrently. ECF Nos. 95, 154. Herrera-Zamora pleaded guilty to Count One (Conspiracy to Distribute and Possess with Intent to Distribute Five Kilograms or More of Cocaine, 21 U.S.C. § 846) and Count Two (Conspiracy to Engage in Money Laundering 18 U.S.C. § 1956 (h)) and was sentenced to 125 months imprisonment on each count, to run concurrently, and three years of supervised release. ECF No.

147. His incarceration sentence was later reduced under 18 U.S.C. § 3582(c)(2) to 100 months. ECF Nos. 221.

On April 26, 2021, Morales-Vega petitioned this Court for compassionate release and a reduction in sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF Nos. 244, 248.

## II. DISCUSSION

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." See 18 U.S.C. § 3582(c); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020). An exception to this rule is the First Step Act, 18 U.C.S. § 3582(c)(1)(A), which allows the court to act on a motion for compassionate release filed by a prisoner. *See United States v. McCoy*, 981 F.3d 271, 274 (4th Cir. 2020). To grant relief, two conditions must be met: (1) the movant must present extraordinary and compelling circumstances; and (2) relief must be consistent with the sentencing factors outlined in 18 U.S.C. § 3553(a).[4] See 18 U.S.C. § 3582(c)(1)(A)(i). If a reduction is merited, this Court must also find that the petitioner would not pose "a danger to the safety of any other person or to the community," U.S.S.G. § 1B1.13(2).

### A. Extraordinary and Compelling Circumstances

---

[4] As a threshold issue, a prisoner must have fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf, where, as here, the Morales-Vega's requisite initial appeal to the BOP has been denied. 18 U.S.C. § 3582(c)(1)(A). The Government argues, incorrectly, that Morales-Vega in this case has not exhausted her administration remedies because her initial application to the BOP did not state all the bases for relief she now raises.

The clear consensus in this District is that a movant need not have included every single basis for compassionate release in the administrative request for release. Judges Grimm, Bredar, and Chuang have held that "exhaustion is not conditioned on a defendant raising specific 'arguments' or 'claims' in their request to the warden." *See United States v. Azianbidji*, No. 17-CR-00253-PWG, 2021 WL 307416, at *3 (D. Md. Jan. 29, 2021). *See also United States v. Fletcher*, C.A. No. TDC-05-0179-01, WL 2020 3972142, at *2 (D. Md. July 13, 2020) (finding "the statute includes no language conditioning exhaustion on precise identity between the specific arguments made in the request to the Warden and those made in the motion filed in the court."); *United States v. Gutman*, C.R. No. RDB-10-0069, 2020 WL 2467435, at *1 (D. Md. May 13, 2020) (finding that a clear and unambiguous request for compassionate relief satisfied the exhaustion requirement). The Court agrees, and likewise concludes Morales-Vega has satisfied the exhaustion requirement here.

4

In reviewing a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), "courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)). The Court need not defer to the Sentencing Commission's policy statements regarding what constitutes "extraordinary and compelling reasons," rather, the Court has independent discretion to determine if these criteria are met. *See United States v. Wise*, ELH-18-72, 2020 WL 2614816, at *6 (D. Md. May 22, 2020).

Morales-Vega asserts that her vulnerability to COVID-19, due to underlying health conditions, as well the disparity between her sentence and those of her Co-Defendants, constitute extraordinary and compelling circumstances that justify a sentence reduction. The Court disagrees as to both arguments.

### 1. Vulnerability to COVID-19

The Fourth Circuit has recognized that "COVID-19 raises medical issues in the prison context that are particularly serious — it is highly communicable; it is aggravated by certain other medical conditions; and it can be lethal." *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021). Thus, during the COVID-19 pandemic, the standard of extraordinary and compelling reasons has been met where a prisoner has medical conditions that place them at high risk of becoming seriously ill or dying if they contract the disease. *See, e.g., United States v. Ogundele*, No. 8:15-cr-277-PWG-1, 2021 WL 1541660, at *4 (D. Md. Apr. 20, 2021) (diabetes and hypertension, in the context of the COVID-19 pandemic, constitute extraordinary and compelling reasons for release); *United States v. Benson*, No. 09-CR-0240-PWG, 2020 WL 7239983, at * (D. Md. Dec. 9, 2020) (same, with respect to hypertension coupled with COVID-19 infection). Judges have also considered the risk of contracting COVID-19 at a given facility. *See United States v. Stewart*, No.

5

16-cr-410-PWG, 2021 WL 948814 at *2 (March 12, 2021) (considering status of COVID-19 spread at facility in evaluating extraordinary and compelling reasons).

Currently, given the availability of highly effective vaccines against COVID-19, which reduce the risk of severe disease and death, a petitioner's vaccination status is also relevant to the assessment of whether extraordinary and compelling reasons for release are present. See *United States v. Sanders*, Case No. SAG-06-087, 2021 WL 1428546 at *2-3 (April 15, 2021) (concluding that receipt of one dose of vaccine, with second dose forthcoming, removed Petitioner with underlying medical conditions from the category of risk constituting "extraordinary and compelling" reason for release).

Morales-Vega, who is 50 years old, suffers from health conditions recognized by the CDC to put individuals at higher risk from COVID-19, specifically, Type II diabetes, hypertension, and being overweight. ECF No. 248; People with Certain Medical Conditions, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (accessed Oct. 18, 2021). For these conditions, she is prescribed several medications. Exhibit C-59, Medical Record.[5] However, she claims that, despite the medication, her diabetic condition has not been under control or effectively managed. Exhibit C-58, Medical Record. Morales-Vega argues that given her medication has not controlled her diabetes, were she to contract COVID-19, she would be at a significant risk of serious illness. Thus, Morales-Vega submits that her vulnerability to COVID-19 constitutes an extraordinary and compelling reason for release.

The Court has little trouble concluding that Morales-Vega's health conditions are of the type that put a person at greater risk should they contract COVID-19, and thus, could constitute

---

[5] Defendant also contends that around 1995, she developed an undescribed "nervous system condition" that caused memory loss. ECF No. 248. It is unclear precisely what that condition is.

6

extraordinary and compelling reasons for release.[6] As stated, however, vaccination status also factors into the assessment. Here, Morales-Vega is fully vaccinated, having received both doses of the Pfizer vaccine.

Morales-Vega argues that, even though she has been vaccinated, there is still a risk of her becoming infected, such that she should be release. *See, e.g., United States v. Evelyn Ceclia Bozon Pappa*, Case No. 95-00084-cr-JAL, at *4 (S.D. Fla. April 1, 2021) (fact that defendant received a COVID-19 vaccine does not eliminate risk); *see* Frequently Asked Questions About COVID-19 Vaccination, Centers for Disease Control and Prevention, https://tinyurl.com/375j45v5 (period of immunity conferred by the vaccine is also unknown) (last accessed Oct. 18, 2021). It is true that the COVID-19 vaccines are not 100% effective; breakthrough cases can occur, and there are other unknowns, such as the duration of vaccine efficacy. What is known, however, is that the vaccines are highly effective at preventing serious disease. As the Government points out, the Pfizer vaccine Morales-Vega received has been approved by the FDA, based on the conclusion that, in extensive testing, the vaccine was 91% effective in preventing COVID-19 infection, including in participants with medical conditions associated with high risk of severe COVID-19 disease. *See* FDA Approves First COVID-19 Vaccine, U.S. Food & Drug Admin., https://www.fda.gov/news-events/press-announcements/fda-approves-first-covid-19-vaccine (last accessed Oct. 18, 2021). Based on the evidence before the Court at this time, it concludes that Morales-Vega's vaccination renders her particular underlying conditions no longer so risky as to constitute an extraordinary compelling reason for release. *See United States v. Johnson*, No. 4:19-cr-00579-DCC-1, 2021 WL

---

[6] The Government focuses its argument on the Sentencing Commission's policy statements in U.S.S.G. § 1B1.13 regarding criteria for health conditions to constitute extraordinary and compelling circumstances. ECF No. 254. As Judges in this District have made clear, and as the Fourth Circuit affirmed in *McCoy*, the § 1B1.13 categories are not binding on this court's analysis for compassionate release. See *McCoy*, 981 F.3d at 284; *United States v. Palmer*, Case No. 8:13-cr-00623-PWG-2, 2021 WL 3212586 at *2 n. 4 (D. Md. Jul. 29, 2021).

1791499 at *2 (D. S.C. May 5, 2021) (petitioner with Type II diabetes, hypertension, and obesity, who had received vaccine did not present extraordinary and compelling reasons for release). *Compare United States Palmer*, 8:13-cr-00623-PWG-2, WL 3212586, at *3 (D. Md. Jul. 29, 2021) (sickle cell disease, deep vein thrombosis, and pulmonary embolism, combined with the medical issues and unknowns of COVID-19, even once vaccinated, established "extraordinary and compelling reasons" for compassionate release).

This conclusion is further confirmed taking into account the risks at Morales-Vega's particular incarceration facility: FCI Aliceville. See *United States v. Taylor*, No. 17- cr-0268-PWG, 2020 WL 6322620, at *3 (D. Md. Oct. 28, 2020), appeal dismissed, No. 20-7632, 2021 WL 1784092 (4th Cir. Jan. 13, 2021) (finding that hypertension and high BMI were not sufficient to warrant prisoner's release when the spread of coronavirus in his BOP facility was under control, and prisoner did not show that he would not receive appropriate treatment at his BOP facility or a nearby medical facility if he were to contract the virus). The Government submits that nearly 100% of inmates and staff at the facility are vaccinated, greatly reducing the risk of disease spread. Currently, BOP reports zero inmates and five staff with confirmed active cases. COVID-19 Operations, Federal Bureau of Prisons, https://tinyurl.com/246h6e5y (last accessed Oct. 18, 2021).

Thus, while Morales-Vega faces health problems which could pose a risk should she be infected with COVID-19, she is protected from both infection and serious symptoms thanks to having received the Pfizer vaccine, as well as the fact that the vaccination rate at FCI Aliceville is high. In other words, her health conditions, combined with the risk of contracting COVID-19, do not amount to an extraordinary and compelling circumstance for release.

**2. Sentencing Disparity**

A sentencing disparity may, in limited circumstances, also constitute an extraordinary and compelling reason to reduce a sentence and grant compassionate release. See *McCoy*, 981 F.3d at 285-286 (upholding reduction of sentences to time served where defendants would have received 30 years-lower sentences currently due to statutory changes); *United States v. Payton*, PJM-06-cr-341, 2021 WL 927631, at *2-3 (D. Md. March 11, 2021) (granting reduction where Defendant's more culpable co-defendant had benefitted from three changes in sentencing regime and been released); *United States v. Edwards*, PJM-05-cr-179, 2021 WL 1575276, at *2-3 (D. Md. April 22, 2021) (same).

Morales-Vega argues that the disparity between her sentence and those of her Co-Defendants, particularly Co-Defendants Herrera-Zamora and Herrera, qualifies as an extraordinary and compelling circumstance. As stated *supra*, Morales-Vega received the most severe sentence of all her Co-Defendants, 210 months, compared to 125 months for Herrera-Zamora, and 155 months for Herrera. Herrera-Zamora and Herrera also successfully moved to reduce their sentences, pursuant to 18 U.S.C. § 3582(c)(2) (permitting a defendant to move for sentence reduction based on a sentencing range that has subsequently been reduced), resulting in sentences of 100 and 124 respectively.

Several of Morales-Vega's arguments as to why her disparate sentence should be reduced ultimately boil down to her assertion that her initial sentence should have been different. She argues that Herrera-Zamora and Herrera were "equally or more" culpable, challenging the sentencing enhancement she received for her management, if not leadership, role in the conspiracy, as well as her weapons enhancement. She argues these enhancements, combined with the benefit her Co-Defendants received for early acceptance of responsibility (which she did not do) cannot justify the extent of the sentencing disparity. Finally, Morales-Vega argues that because her Co-

9

Defendants qualified for relief under § 3582(c)(2), i.e. Herrera's sentence was reduced from 155 to 124 months considering that his offense level would have been two levels lower under the amended sentencing guidelines and where the 18 U.S.C. § 3553(a) factors supported release, her own sentence should likewise be reduced to track the reductions, since doing otherwise would increase the disparity between her sentence and the reduced sentences more than necessary to account for her conduct as opposed to those from Herrera-Zamora and Herrera.

The Court is convinced that the disparity in Morales-Vega's sentence as compared to her Co-Defendants remains warranted. Whether or not she was an organizer or leader, Morales-Vega clearly had a significant role in a major drug trafficking conspiracy; she had access to a significant amount of drugs, and was deemed a "manager or supervisor" within the conspiracy. Her Co-Defendants, in contrast, were found to be more minor players. Compare *Payton*, PJM-06-cr-341 at *2 (disparity where Defendant middling supplier of drugs punished more severely than violent ringleader who dealt in far greater amounts of drugs extraordinary and compelling circumstance). Moreover, in contrast to her Co-Defendants, Morales-Vega possessed a weapon and ammunition, nor could she benefit from early acceptance of responsibility. The initial disparities due to her weapons enhancement, leadership role, and lack of early acceptance of responsibility resulted in the initial 55- to 85-month differentials between her sentence and those of Herrera and Herrera-Zamora. The Court is not prepared to revisit the allocation of responsibility and punishment now. Finally, that the disparities increased because her Co-Defendants benefitted from a sentence reduction pursuant to §3582(c)(2) does not entitle Morales-Vega to the same. Indeed, the Court has already twice considered and twice denied motions by Morales-Vega to reduce her sentence under § 3582 (c)(2). See ECF Nos. 239, 243.

In sum, the Court finds that Morales-Vega has not met her burden of demonstrating extraordinary and compelling circumstances.

## B. The § 3553(a) Factors

Though Morales-Vega has not demonstrated extraordinary and compelling reasons justifying modification of her sentence, the Court nonetheless addresses her contention that the sentencing factors under 18 U.S.C. § 3553(a) militate in favor of early release. See 18 U.S.C. § 3582(c)(1)(A). Those factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed;" (3) "the kinds of sentences available;" (4) the sentencing guideline ranges; (5) "any pertinent policy statement;" (6) "the need to avoid unwarranted sentence disparities among defendants with similar records;" and (7) "the need to provide restitution to the victims of the offense." 18 U.S.C. § 3553(a). The Court concludes that the sentencing factors still tip in favor of the Government's argument that Morales-Vega is not an appropriate candidate for release.

Beginning with her threat to the safety of others, Morales-Vega argues that she is not likely to pose a physical safety threat: she has no prior violent criminal history, although her prior possession of weapons tempers that assessment to some extent, and she has had no disciplinary actions while in custody. The Government argues that Morales-Vega's multiple sources of cocaine prior to her incarceration and the seriousness of her offense makes her a continued danger to the community in a broader sense. This may or may not be true.

In a similar vein, considering Morales-Vega's history and characteristics, commendably, she has no infraction record for her period of incarcerated, and she has participated in various activities which demonstrate her rehabilitation. She also has a viable re-entry plan to live with family and has employment secured. However, as noted by sister courts, a "defendant's

11

rehabilitation alone proves insufficient to warrant a sentence reduction." *See United States v. Woolridge*, No. 3:09CR156 (DJN), 2021 WL 415131, at *7 (E.D. Va. Feb. 5, 2021). Moreover, while Morales-Vega points to her lack of a criminal history prior to this sentence, this factor has already been taken into account in her original sentencing, in finding a Level I criminal history level.

Considering the nature and circumstances of her offense, the Court notes that Morales-Vega played a significant and critical role in a serious drug conspiracy. Though the offense was not itself violent, it was an organized, multi-person scheme involving hundreds of thousands of dollars of narcotics moving between communities on the East Coast. Morales-Vega boasted to a confidential source that she could "order any number of kilograms of cocaine." PSR ¶ 7. On the day agents raided her house, they recovered cocaine, drug paraphernalia, weapons, and ammunition. *Id.* ¶ 9. The drug quantities were substantial: "[a] Task Force Officer testified that based upon the size of the plastic baggies and the presence of residue, the bags held at least 11 kilograms of cocaine." *Id.* The nature and circumstances of the offense, therefore, weigh against early release.

Morales-Vega, today at least to her credit, recognizes the severity of her conduct, but argues that the sentence she has already served is sufficient punishment and deterrence. The Court disagrees. Her sentence was within the guidelines range and, notably, it was the lowest possible sentence in that range. True – she has at this point served the majority of this sentence, i.e. about 164 months, which is not insignificant, but at she still has over 45 months remaining on the 210-month sentence.[7] *See United States v. Jennings*, Crim. No. PWG-13-046, 2020 WL

---

[7] Though she has 45 months remaining on the sentence, Morales-Vega's projected release date is April 18, 2023, presumably due to credit for good behavior. See Find an Inmate, Federal Bureau of Prisons, www.BOP.gov/inmateloc (accessed Oct. 18, 2021).

4748462, at *5 (D. Md. Aug. 17, 2020) (early release of approximately two weeks after serving 94 months in prison is consistent with the sentencing factors). *Compare Ogundele*, No. 8:15-cr-277-PWG-1 at *6 (denying release where Defendant had served less than 30% of his sentence). Even so, in light of the severity of Morales-Vega's crime, the importance of deterrence and promoting respect for the law, as well as the appropriateness of her current 210-month sentence, the Court is not persuaded that she has already served a "sufficient, but not greater than necessary" sentence, to comply with the purposes of sentencing. 18 U.S.C. § 3553(a).

## CONCLUSION

For the foregoing reasons, Morales-Vega's Motion for Compassionate Release is **DENIED WITHOUT PREJUDICE.**

A separate Order will **ISSUE.**

/s/
_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

October 19, 2021